UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
ANTHONY CAROLLO,

                Plaintiff,

          - against -

SOCIAL SECURITY ADMINISTRATION,

                Defendant.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
23-CV-3277 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Anthony Carollo ("Plaintiff") brings this action under 42 U.S.C. § 405(g) against the Social Security Administration ("SSA"). Plaintiff seeks judicial review of the SSA's decision denying his claim for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Compl., Dkt. 1, at 1.) The parties have cross-moved for judgment on the pleadings. (Dkts. 10, 13.) For the reasons set forth below, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The case is remanded for further proceedings consistent with this Memorandum and Order.

## BACKGROUND

### I. Procedural History

Plaintiff filed applications for a period of disability, DIB, and SSI on October 2, 2019, alleging a disability onset date of April 1, 2017, due to brain seizures, depression, anxiety, blurry vision, loss of memory, hypertension, cognitive inhibition, high blood pressure, panic attacks, and deterioration in dexterity. (Tr. at 306, 374–75.)[1] On February 3, 2020, Plaintiff's applications

---

[1] Page references prefaced by "Tr." refer to the continuous pagination of the Administrative Transcript, (see Dkts. 9, 9-1, 9-2), appearing in the lower right corner of each page, and not to the internal pagination of the constituent documents or the pagination generated by the Court's CM/ECF docketing system.

were initially denied, and on July 23, 2020, Plaintiff's applications were denied on reconsideration.[2]  (*Id.* at 306, 372–73, 423–24.)  At Plaintiff's request, Administrative Law Judge ("ALJ") David Suna held a hearing on December 23, 2020, at which Plaintiff, his counsel, and a Vocational Expert ("VE") appeared.  (*Id.* at 306.)  At the hearing, Plaintiff amended the date of alleged onset of disability to April 27, 2018.  (*Id.*)  By decision dated April 28, 2021, the ALJ found that Plaintiff was not disabled under the Social Security Act ("the Act").  (*See generally id.* at 306–320.)  The Appeals Council denied Plaintiff's request for review of the ALJ's decision on March 15, 2023.  (*Id.* at 1–5.)  On May 1, 2023, Plaintiff timely[3] filed this action challenging Defendant's denial of his benefits applications.  (*See* Compl., Dkt. 1.)

## II.     ALJ Decision

The Commissioner employs a five-step inquiry to evaluate Social Security disability claims.  *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (explaining that plaintiff bears the burden of proof at the first four steps

---

[2] The Administrative Law Judge's decision states that reconsideration was denied on July 31, 2020, (Tr. at 306); however, the denial is dated July 23, 2020, (*id.* at 423–24).

[3] Section 405(g) provides that:

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g).  "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary."  *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing, *inter alia*, 20 C.F.R. §§ 404.981, 422.210(c)).  Here, the Commissioner's decision became final when the Appeals Council denied review on March 15, 2023.  Plaintiff commenced this action on May 1, 2023—47 days after the Appeals Council denied review.  Therefore, this action is timely.

2

of the inquiry; the Commissioner bears the burden at the final step). Here, at step one, the ALJ found that Plaintiff met the insured status requirements of the Act through March 31, 2020, and that Plaintiff had not engaged in substantial gainful activity since April 27, 2018, the alleged onset date. (Tr. at 308.) At step two, the ALJ found that Plaintiff "ha[d] the following severe impairments: seizure disorder, encephalopathy, hypertension, obesity, depressive disorder, anxiety disorder, cognitive disorder, and substance abuse disorder[.]" (*Id.* at 309.) However, the ALJ found Plaintiff's "status post gunshot wound in the right arm, myopia, and cataracts . . . to be non-severe." (*Id.*) At step three, the ALJ then determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. (*Id.*) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work "except that [Plaintiff] can never climb ladders, ropes, and scaffolds; no more than occasionally balance; avoid concentrated exposure to vibration and bright sunlight; tolerate no more than moderate noise; and no exposure to hazards such as unprotected heights, moving mechanical parts, and operating a motor vehicle." (*Id.* at 311.) The ALJ continued: "[Plaintiff] is also limited to simple, routine tasks that are not at a production rate pace (e.g., assembly line work); no more than occasional interaction with supervisors, co-workers and the public; can tolerate no more than occasional changes in the work setting; and can perform work that requires no more than occasional looking at a screen such as a computer." (*Id.*) At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work. (*Id.* at 318–19.) Nevertheless, at step five, the ALJ found that Plaintiff could perform several jobs that exist in significant numbers in the national economy. (*Id.* at 319–20.) Specifically, the ALJ found that Plaintiff could work as a small parts assembler, price marker, or electrical assembler. (*Id.* at 319.)

**STANDARD OF REVIEW**

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. §§ 405(g), 1383(c)(3). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151. "Substantial evidence is more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (alterations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks omitted). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* However, "it is up to the agency, and not th[e] court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013).

**DISCUSSION**

**I.  Failure to Develop the Record**

"Before determining whether the Commissioner's final decision is supported by substantial evidence under 42 U.S.C. § 405 (g), 'the court must first be satisfied that the ALJ provided plaintiff with a full hearing under the Secretary's regulations and also fully and completely developed the administrative record.'" *Ajibose v. Colvin*, No. 15-CV-3346 (PKC), 2016 WL 8711342, at *7 (E.D.N.Y. Sept. 30, 2016) (quoting *Scott v. Astrue*, No. 09-CV-3999 (KAM), 2010 WL 2736879,

4

at *12 (E.D.N.Y. July 9, 2010)) (internal quotation marks omitted). The ALJ must "affirmatively develop the record" and must independently make reasonable efforts, including sending follow-up requests, to obtain medical opinions. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir. 2009)); 20 C.F.R. § 404.1512(b)(1)(i).

Here, the ALJ failed to develop the record with respect to Plaintiff's mental health. The ALJ's duty to obtain medical opinions and treatment records is "heightened when a claimant asserts a mental impairment." *Pomales v. Acting Comm'r of Soc. Sec.*, No. 22-CV-6009 (AEK), 2023 WL 6240627, at *6 (S.D.N.Y. Sept. 26, 2023) (quoting *Angelica P. v. Comm'r of Soc. Sec.*, No. 21-CV-9529 (GRJ), 2023 WL 2366913, at *4 (S.D.N.Y. Mar. 6, 2023)) (internal quotation marks omitted). Plaintiff's medical records indicated that he received regular mental health treatment. (Tr. at 706 (noting that Plaintiff "ha[d] been in treatment at Integrity with a counselor named Leo for a few months one time a week"), 745 (noting that Plaintiff was treated by a psychiatrist for bipolar disorder).) At the hearing, Plaintiff also testified that he received treatment for depression and anxiety, meeting with a counselor and psychiatrist every two weeks. (*Id.* at 346.) Despite this evidence, there is no indication that the ALJ made any effort to obtain opinions or medical records from these treating sources. This alone warrants remand. *See Berry v. Comm'r of Soc. Sec.*, No. 22-CV-7615 (PKC), 2024 WL 1382765, at *3 (E.D.N.Y. Mar. 21, 2024) (collecting cases and remanding where, *inter alia*, ALJ made no attempt to obtain an opinion or treatment notes from a source who provided mental health treatment to claimant); *see also Rodriguez v. Comm'r of Soc. Sec.*, No. 19-CV-6855 (VSB) (JLC), 2020 WL 3968267, at *18 (S.D.N.Y. July 14, 2020) ("Having failed to obtain any additional mental health treatment

5

notes . . . , the ALJ thus relied on an incomplete medical record. Such reliance is an error warranting remand.").

## II.   Additional Grounds for Remand

While a failure to develop the record is sufficient to remand, several other aspects of the ALJ's decision warrant discussion.

First, the ALJ cherry-picked medical evidence to support his RFC determination. "[A]n ALJ may not 'cherry-pick' medical opinions, or selectively cite treating notes or diagnostic imaging that support the ALJ's own view while ignoring opinions and evidence that do not." *Jones v. Saul*, No. 19-CV-5542 (LGS) (BCM), 2020 WL 5775525, at *12 (S.D.N.Y. Sept. 11, 2020), *R. & R. adopted*, 2020 WL 5775195 (S.D.N.Y. Sept. 28, 2020). Here, the ALJ described Plaintiff's seizures as being "nocturnal and closer to 'spells.'" (Tr. at 315.) The ALJ's reference to "spells" is taken out of context from a February 2019 treatment note, which mentions that Plaintiff had "spells of biting [his] tongue in his sleep." (*Id.* at 694.) However, more recent medical records from June 2019 and April 2020 note an increase in seizures and concerns of recurrent seizures. (*Id.* at 747, 751.) Moreover, a September 2019 treatment note from Plaintiff's treating neurologist remarked that "[i]t is difficult to envision [Plaintiff] functioning in a competitive work environment with his current cognitive impairment." (*Id.* at 748.) The ALJ made no reference to this observation by Plaintiff's treating neurologist when he found that Plaintiff had the RFC to perform light work "limited to simple, routine tasks that are not at a production rate pace (e.g., assembly line work)," involving "no more than occasional interaction with supervisors, co-workers and the public," and that Plaintiff could tolerate occasional changes in the work setting and perform work that requires occasional looking at a screen such as a computer. (*Id.* at 311.) Courts frequently remand where, as here, an ALJ "ignores or mischaracterizes medical evidence or

6

cherry-picks evidence that supports his RFC determination while ignoring other evidence to the contrary." *See Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022); *Hahn v. Saul*, No. 20-CV-6124 (KAM), 2023 WL 4975970, at *7 (E.D.N.Y. Aug. 3, 2023) (remanding where the ALJ cherry-picked findings from one physician's consultative examination despite contradictory findings from several other medical sources).

Second, the ALJ failed to properly evaluate the medical opinions in the record. As an initial matter, the ALJ overly relied on the opinion of one-time consultative examiner, Dr. Allen Meisel. (Tr. at 317.) "While heavy reliance on a one-time examiner's opinion does not automatically constitute a legal error, the Second Circuit has warned that heavily relying on an examiner who only examined a claimant once is inadvisable." *Fintz v. Kijakazi*, No. 22-CV-337 (KAM), 2023 WL 2974132, at *5 (E.D.N.Y. Apr. 15, 2023) (citing *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019)). Here, Dr. Meisel's opinion was the *only* opinion that the ALJ found to be at all persuasive. (Tr. at 316–18.) In contrast, the ALJ found the opinion of Dr. Abrah Sprung, a consultative examiner who conducted a psychological assessment of Plaintiff and found Plaintiff had marked limitations, (*see id.* at 706–710), and the opinions of four state experts, all of which found Plaintiff had mild limitations, (*see id.* at 379–85, 404–09), to be unpersuasive, (*see id.* at 316–18). And there were *no* opinions from treating sources in the record. *See Goggins v. Kijakazi*, No. 23-CV-285 (PKC), 2024 WL 1259356, at *4 (E.D.N.Y. Mar. 25, 2024) ("An ALJ is permitted to take into consideration the opinion of a non-examining source in determining a claimant's RFC; however, because a treating source examines a claimant directly, they may have a better understanding of a claimant's impairment(s) than if the medical source only reviews evidence in a claimant's folder." (cleaned up)).

7

Third, the ALJ impermissibly substituted his own judgment for that of a medical expert in his discussion of Plaintiff's daily functioning. The ALJ noted that "the record revealed that [Plaintiff] provided care for his son, isolated himself, and watched television," "could attend to his personal needs (e.g., feeds himself, shaves, and uses a toilet)," and was able to "lift, sit, kneel, squat, reach, and hear independently." (Tr. at 315.) Thus, the ALJ concluded that "[Plaintiff's] activities of daily living [were] not as self-restricted as alleged." (*Id.*) Although "evidence of daily functioning can certainly inform an RFC determination, it must be supported by an adequate medical opinion." *Schmidt v. Comm'r of Soc. Sec.*, No. 20-CV-3594 (KAM), 2022 WL 1540054, at \*6 (E.D.N.Y. May 16, 2022); *see also Kirby v. Saul*, No. 20-CV-2270 (FB), 2021 WL 4197264, at \*3 (E.D.N.Y. Sept. 15, 2021) ("[N]either [plaintiff's] ability to perform personal tasks—like showering, getting dressed, and going to doctor's appointments—her 'conservative' treatment choices, nor her decision to return to work after a period of disability amounts to substantial evidence."). Moreover, "[w]hile the ALJ and Commissioner can consider a claimant's daily activities in assessing the intensity and persistence of a claimant's symptoms, 'a claimant need not be an invalid to be found disabled.'" *Skartados v. Comm'r of Soc. Sec.*, No. 20-CV-3909 (PKC), 2022 WL 409701, at \*10 (E.D.N.Y. Feb. 10, 2022) (citations omitted) (first citing 20 C.F.R. § 404.1529(c)(3)(i); then quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998)); *see also Balsamo*, 142 F.3d at 81–82 ("'[W]hen a disabled person gamely chooses to endure pain in order to pursue important goals,' such as attending church and helping his wife on occasion go shopping for their family, 'it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working.'" (quoting *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir. 1989))). Particularly in light of the ALJ's treatment of the medical opinions in the record, it was improper for the ALJ to construe Plaintiff's daily functioning report

8

as "contradict[ing] allegations of disability, 'as people should not be penalized for enduring the pain of their disability in order to care for themselves.'" *Cabibi v. Colvin*, 50 F. Supp. 3d 213, 238 (E.D.N.Y. 2014) (quoting *Valet v. Astrue*, No. 10-CV-3282 (KAM), 2012 WL 194970, at *19 (E.D.N.Y. Jan. 23, 2012)).

Based on the forgoing, the Court finds that the ALJ's decision was not supported by substantial evidence.

## CONCLUSION

For the reasons set forth herein, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is vacated and this action is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Memorandum and Order. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 9, 2024
        Brooklyn, New York